Approved: _____
JENNIFER N. ONG
Assistant United States Attorney

Before:    THE HONORABLE ANDREW E. KRAUSE
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :    **SEALED COMPLAINT**    21mj7735

         - v. -                     :    Violation of
                                         21 U.S.C. § 846
MICHAEL GILES,                      :
    a/k/a "Snoop,"                       COUNTY OF OFFENSE:
MAURICE JACKSON,                    :    WESTCHESTER
TYSON ROYAL,
JAZZNA WILCHER,                     :

                    Defendant.      :

- - - - - - - - - - - - - - - - - - X


SOUTHERN DISTRICT OF NEW YORK, ss.:

        JEFFREY RAMIREZ, being duly sworn, deposes and says that he
is a Task Force Officer with the Drug Enforcement Administration
("DEA") and charges as follows:

<u>**COUNT ONE**</u>
**(Narcotics Conspiracy)**

        1.    From at least in or about February 2021 up to and
including August 2021 in the Southern District of New York and
elsewhere, MICHAEL GILES, a/k/a "Snoop," MAURICE JACKSON, TYSON
ROYAL, and JAZZNA WILCHER, the defendants, and others known and
unknown, intentionally and knowingly did combine, conspire,
confederate, and agree together and with each other to violate
the narcotics laws of the United States.

        2.    It was a part and an object of the conspiracy
that MICHAEL GILES, a/k/a "Snoop," MAURICE JACKSON, TYSON ROYAL,
and JAZZNA WILCHER, the defendants, and others known and
unknown, would and did distribute and possess with intent to
distribute a controlled substance in violation of Title 21,
United States Code, Section 841(a)(1).

        3.    The controlled substance that MICHAEL GILES,

a/k/a "Snoop," MAURICE JACKSON, TYSON ROYAL, and JAZZNA WILCHER, the defendants, conspired to distribute and possess with the intent to distribute was 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.     I am a Task Force Officer with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as a review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.     Based on my participation in this investigation, as well as my conversations with other law enforcement agents and individuals, I have learned that the DEA, along with other local law enforcement agencies, have been investigating drug trafficking in and around White Plains, New York.

6.     I have spoken with law enforcement officers who are familiar with MICHAEL GILES, a/k/a "Snoop," MAURICE JACKSON, TYSON ROYAL, and JAZZNA WILCHER, the defendants, and their appearances based on prior law enforcement encounters. I am also familiar with the appearance of GILES, JACKSON, ROYAL, and WILCHER based on prior interactions, surveillance, and review of their criminal history reports.

7.     As detailed below, based on my participation in this investigation, as well as my discussions with other law enforcement officers and my review of reports and records, I have learned that since in or about February 2021, law enforcement has used a confidential source ("CI-1"), who, at the direction of law enforcement, arranged a series of controlled purchases of narcotics from MICHAEL GILES, a/k/a "Snoop," the

defendant.[1] As described further below, CI-1 and law enforcement observed JAZZNA WILCHER, the defendant, participate in two of the controlled purchases that were arranged by CI-1 and GILES.

8.    Based on my participation in the investigation, my discussions with other law enforcement officers, and my review of reports and records in this case, I know that before each of CI-1's controlled purchases of narcotics from MICHAEL GILES, a/k/a "Snoop," the defendant, law enforcement officers searched CI-1 for money and contraband with negative results before and after each meeting, outfitted CI-1 with an audio recording device, and provided CI-1 with prerecorded buy money. In addition to reviewing audio recordings from the recording device after each controlled purchase, law enforcement also physically surveilled the transactions.

9.    Based on my review of the relevant recordings, buy sheets, and records in this investigation, I know that, from in or about February 2021 to in or about April 2021, CI-1 made five controlled buys of narcotics from MICHAEL GILES, a/k/a "Snoop," and JAZZNA WILCHER, the defendants. CI-1 purchased approximately 48 grams of crack cocaine from GILES during 3 of these controlled buys.  These controlled buys are described in greater detail below:

      a. On or about February 25, 2021, at the direction of law enforcement, CI-1 had an audio recorded phone conversation with GILES at a number ending in 6787 (the "GILES Phone") to coordinate a purchase of 2 bundles of heroin/fentanyl and approximately $400 worth of crack cocaine. GILES and CI-1 ultimately agreed to meet at a CVS on Mamaroneck Avenue in White Plains, New York. At

---

[1] CI-1 has been assisting the DEA since in or about January 2021. CI-1 was arrested in or about January 2021, for criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law ("NYPL") Section 220.03; and criminal trespass in the third degree, in violation of NYPL Section 140.10. Following his/her arrest, CI-1 agreed to cooperate with law enforcement officers in the hopes of receiving a benefit in connection with his/her state exposure. CI-1 has provided information that has been corroborated and has proven reliable. CI-1 was previously convicted in or about October 2004, of petit larceny, in violation of NYPL Section of 155.30, and sentenced to 3 years' probation and 100 hours of community service.

the arranged meeting time, CI-1 drove his/her vehicle in the vicinity of the CVS parking lot and parked behind a white Acura SUV with New York registration (the "Acura") near the intersection of South Broadway and Carhart Avenue. CI-1 then exited his/her vehicle and talked to the driver of the Acura, later identified as WILCHER. CI-1 gave WILCHER the $560 in prerecorded buy money in exchange for a plastic sandwich bag containing approximately 20 glassine envelopes containing purported heroin, which were stamped with "EMPIRE" in red ink, and a small, knotted bag with one rock of purported crack cocaine. The aggregate weight of the purported crack cocaine was approximately 4 grams.

b. On or about March 4, 2021, at the direction of law enforcement, CI-1 had an audio recorded phone conversation with GILES at the GILES Phone to purchase a "half O" of hard.[2] GILES told CI-1 that it would cost $770. GILES and CI-1 ultimately agreed to meet at the CVS on Mamaroneck Avenue in White Plains. At the arranged meeting time, CI-1 parked his/her vehicle in the CVS parking lot. Shortly thereafter, the Acura parked next to CI-1's vehicle. CI-1 exited his/her vehicle, approached the front passenger side of the Acura, handed WILCHER (who was driving the Acura) the prerecorded buy money, and received a reusable Stop and Shop bag in return from WILCHER. Inside the Stop and Shop bag was a brown UGG shoe box, which had tissue paper and a plastic knotted bag contained purported crack cocaine. The purported crack cocaine field tested positive for the presence of cocaine and had an aggregate weight of approximately 14 grams.

c. On or about April 14, 2021, at the direction of law enforcement, CI-1 had an audio recorded phone conversation with GILES at the GILES Phone to arrange for the purchase of crack cocaine. CI-1

---

[2] Based on my training and experience and conversations with law enforcement officers and CI-1, I know that a "half O" refers to a half ounce, or approximately 14 grams, and "hard" refers to crack cocaine. Accordingly, I believe a "half O of hard" refers to approximately 14 grams of crack cocaine.

ordered a "full one" of hard and asked GILES if he could do 30 "G's" of the hard for $55 a gram; GILES agreed to sell CI-1 the crack cocaine for "16."[3] which I know GILES ultimately instructed CI-1 to meet him at 11 Fisher Court in White Plains (the "11 Fisher Building"). At the arranged meeting time, CI-1 walked into the 11 Fisher Building and met GILES on the third floor. CI-1 gave GILES the $1,600 in prerecorded buy money in exchange for a clear plastic bag containing approximately 30 grams of purported crack cocaine.

10. Based on my review of reports and records and my participation in this investigation, I know that on or about June 29, 2021, the Honorable Kenneth M. Karas issued an order authorizing the interception and recording of wire and electronic communications of, among other individuals, MICHAEL GILES, a/k/a "Snoop," MAURICE JACKSON, TYSON ROYAL, and JAZZNA WILCHER, the defendants, and others known and unknown over the GILES Phone.[4]

11. Over the course of the wiretap on the GILES Phone, MAURICE JACKSON, the defendant, has been intercepted arranging the purchase of narcotics from MICHAEL GILES, a/k/a "Snoop," the defendant, including the purchase of approximately 113 grams of crack cocaine.

a. For example, on or about July 2, 2021, JACKSON was intercepted over the GILES Phone texting GILES that he would "be coming for (10) hard a little later" and that he "[n]eed[ed] (10) hard already done."[5] GILES then tells JACKSON a price and location to consummate the deal.

---

[3] Based on my training and experience and conversations with other law enforcement officers and CI-1, I believe that "full one" refers to one ounce, "G's" refers to grams, and "16" refers to $1,600. Accordingly, CI-1 is asking if he/she can buy a full ounce or 30 grams of crack cocaine for $55 a gram, and GILES agrees to sell CI-1 the crack cocaine for $1,600.

[4] The conversations intercepted over the GILES Phone that are discussed below are based on initial draft transcripts or line sheets and subject to later revision.

[5] Based on my training and experience, I know that "hard" and "done" refer to crack cocaine and "10" here refers to a quantity of crack cocaine in grams.

b. Similarly, on or about July 16, 2021, JACKSON and GILES had the following phone conversation:

JACKSON:   Perfect. I need, uh, [Stammers] you got that same shit, that "Done" already. That [Unintelligible] fire.
GILES:   Yeah. Sure do.
JACKSON:   [Laughs] Alright. I need 14 of that.
GILES:   Fourteen?
JACKSON:   Fourteen. And 120 of the other.
GILES:   Alright. Let me call you back in a couple of minutes.

Based on my training and experience, and involvement in this investigation, I believe that JACKSON is asking GILES for 14 grams of crack cocaine ("14 done").

c. Additionally, on or about July 26, 2021, JACKSON and GILES had the following phone conversation:

JACKSON:   Alright, do me a favor. Can you do 40 hard and 10 soft?[6]
GILES:   Sure I can.
JACKSON:   My man.
GILES:   Got you.

GILES and JACKSON then agreed on a time and place for the transaction. Based on my training and experience, and involvement in this investigation, I believe that JACKSON is ordering 40 grams of crack cocaine ("40 hard") and 10 grams of powder cocaine ("10 soft"). Law enforcement surveilling JACKSON and GILES observed the two men, in two separate vehicles, meeting at the agreed-upon time from the call earlier that day. Law enforcement then observed GILES hand JACKSON an item through the front passenger window.

d. Immediately following the transaction described above, law enforcement conducted a traffic stop of JACKSON. JACKSON provided a New York State

---

[6] Based on my training and experience, I believe that "soft" refers to powder cocaine.

driver license bearing the name "Maurice Jackson." Law enforcement seized a bag containing one clear plastic bag of purported crack cocaine; one clear plastic bag of purported powder cocaine; and approximately 5 pills of suspected oxycodone from the glove compartment of the vehicle JACKSON was driving. The suspected crack cocaine field tested positive for the presence of cocaine.

   e. Based on my training and experience and involvement in this investigation, I believe the quantity of crack cocaine and frequency with which JACKSON purchased crack cocaine from GILES is consistent with re-sale (and not personal use).

     12.   Over the course of the wiretap on the GILES Phone, TYSON ROYAL, the defendant, has been intercepted arranging the purchase of narcotics from MICHAEL GILES, a/k/a "Snoop," the defendant, including the purchase of approximately 141 grams of crack cocaine.

   a. For example, on or about July 1, 2021, ROYAL was intercepted over the GILES Phone telling GILES "to grab that shit and then just drop me another half."[7] GILES agrees and then directs ROYAL to a location to consummate the transaction.

   b. Similarly, on or about July 11, 2021, ROYAL and GILES had the following phone conversation:

   ROYAL:     Aight. I'll [Unintelligible] to you. Aight, if anything, yo, uh, I got, uh, I got two five. I just needed another half. But I need to go upstate to take care of some shit.
   GILES:     Okay, I got you.

   Based on my training and experience, and involvement in this investigation, I believe that "half" refers to a half ounce, or approximately 14 grams, of crack cocaine. Accordingly, in the

_____

[7] Based on my training and experience, and involvement in this investigation, I believe that "half" refers to a half ounce, or approximately 14 grams, of crack cocaine.

above excerpted phone conversation, ROYAL is
ordering approximately 14 grams of crack cocaine
from GILES.

c. Additionally, on or about July 16, 2021, ROYAL
and GILES had a conversation where ROYAL asks if
GILES is around and GILES tells ROYAL that he
will bring him the "whole thing." Based on my
training and experience, and involvement in this
investigation, I believe that "whole thing"
refers to one ounce, or approximately 28.5 grams,
of crack cocaine. Accordingly, here GILES is
agreeing to bring ROYAL approximately 28.5 grams
of crack cocaine.

d. Based on my training and experience and
involvement in this investigation, I believe the
quantity of crack cocaine and frequency with
which ROYAL purchased crack cocaine from GILES is
consistent with re-sale (and not personal use).

WHEREFORE, deponent respectfully requests arrest warrants
be issued for MICHAEL GILES, a/k/a "Snoop," MAURICE JACKSON,
TYSON ROYAL, and JAZZNA WILCHER, the defendants, and that they
be imprisoned or bailed, as the case may be.

JEFFREY RAMIREZ
Task Force Officer
Drug Enforcement Administration

Sworn to me this 5th day of August, 2021.

THE HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8